ADA PEARSON, Appellee, v. MABEL SEYMOUR BUTTS, doing business as SEYMOUR BEAUTY PARLOR, Appellant.

No. 44048.

NOVEMBER 23, 1937.

REHEARING DENIED MARCH 18, 1938.

Sampson & Dillon, for appellant.

A. J. Myers, for appellee.

KINTZINGER, J.—On April 13, 1936, appellee received and paid for a shampoo and permanent end curl at defendant's

beauty parlor in Des Moines. She was assigned to one of defendant's licensed and experienced cosmetologists for the treatment. There was evidence tending to show that in giving this service an electric heater is used which generates steam within three or four minutes. Appellee testified that the actual steaming process applied to her lasted about twenty minutes. She also testified that during this time she complained to the operator about her head getting very hot. The evidence also tends to show that in order to relieve the pain cold towels were applied to her face, and that the pain was so intense that the operator was unable to "set" her hair.

Shortly after leaving the shop, plaintiff became so ill from the treatment that she returned to the shop and advised the operator of her injuries and received some kind of local treatment therefor. There is also evidence tending to show that there were several burns upon her head; that she suffered pain for over a month after receiving the injury; and was unable to do any household or other work for a week and a half.

Appellant's witnesses denied that plaintiff received any burns but sustained only an irritation to the scalp, described as a "hair pull." Plaintiff returned to the defendant's shop within an hour after receiving the alleged burns. An ointment was applied to her head, and she was advised to return the next day. She failed to return the next day, and received no further treatment until four days thereafter when she again called upon defendant, who then arranged to have plaintiff get treatment from defendant's physician. This she did on the same day, and was advised by him to return the next day. She never returned to this doctor, and received no further treatment until she saw Dr. Smith, her own physician, several days later. The evidence shows without dispute that, although she had received severe burns from the treatment, infection set in thereafter and the injury became aggravated because of her failure to have continued proper medical attention immediately.

At the close of all the testimony, defendant filed a motion for a directed verdict upon several grounds. This was overruled. Thereupon, the case was submitted to the jury and a verdict returned in favor of plaintiff in the sum of $363.50. Defendant then filed a motion for a new trial, which was also overruled, hence this appeal.

I. Defendant contends that the court erred in failing to

direct a verdict because plaintiff failed to establish any negligence on the part of the defendant.

Plaintiff's original petition contained two counts, in one of which she alleged several specific items of negligence, and in the other she alleged negligence generally under the doctrine of "res ipsa loquitur." At the close of the evidence, and pursuant to defendant's motion to compel plaintiff to elect upon which count she would proceed, the plaintiff elected to stand upon count I alleging general negligence under the res ipsa loquitur rule, thus withdrawing count II, alleging specific negligence.

Appellant contends that, having once pleaded specific acts of negligence, plaintiff could not rely upon the presumption of negligence arising by inference under the doctrine of "res ipsa loquitur," as alleged in count I. The record shows, however, that, although specific acts of negligence were alleged in count II, this count was withdrawn by her election to stand upon count I.

■■■ It is true that where general and specific allegations of negligence are alleged in the same count, the doctrine of res ipsa loquitur does not apply and a recovery can be had only upon proof of one or more of the specific acts of negligence alleged. This is because the allegations of specific negligence are considered a waiver of the general allegations in favor of the specific. Sutcliffe v. Fort Dodge G. & E. Co., 218 Iowa 1386, 1393, 257 N. W. 406; Whitmore v. Herrick, 205 Iowa 621, 218 N. W. 334; Rauch v. Des Moines Elec. Co., 206 Iowa 309, 218 N. W. 340; Orr v. Des Moines Electric Light Co., 207 Iowa 1149, 222 N. W. 560; Kelly v. Muscatine, Burlington & Southern R. Co., 195 Iowa 17, 191 N. W. 525.

A different rule applies, however, where the specific acts of negligence are alleged in one count, and general allegations under the res ipsa loquitur rule are alleged in another. And where the allegations of specific negligence alleged in one count are withdrawn, the case may be submitted under the allegations of the remaining count alleging general negligence under the res ipsa loquitur rule. Sutcliffe v. Fort Dodge G. & E. Co., 218 Iowa 1386, 1392, 257 N. W. 406, 409.

In the latter case, this court says:

"The appellee depends upon the principle of res ipsa loquitur to prove the appellant's negligence. As a matter of fact,

in one count of his petition the appellee pleaded general negligence for the purpose of relying upon res ipsa loquitur, and in another he pleaded specific negligence. But before the case went to the jury, the appellee dismissed the count of his petition relating to specific negligence, and left remaining only the one having to do with general negligence and the res ipsa loquitur rule.''

Such was also the situation in this case, and it was submitted to the jury upon count I under the doctrine of res ipsa loquitur. In Sutcliffe v. Fort Dodge G. & E. Co., 218 Iowa 1386, 1. c. 1393, 257 N. W. 406, 410, this court further said: ''Such Iowa rule * * * has become firmly established in this state.''

Appellant contends, however, that such a rule does not apply in the case of a licensed cosmetology operator, and that because a license to practice this profession requires a certain amount of training, the rules applicable to the medical profession should apply. Appellant therefore contends that because no specific acts of negligence were alleged, the motion for a directed verdict should have been sustained. The res ipsa loquitur rule, however, is generally applied where all the instrumentalities which could likely cause an injury were under the exclusive control and management of the defendant, and where the injury is such as would not ordinarily occur if due care had been exercised in the control thereof.

It is unnecessary to decide in this case whether or not the rule of res ipsa loquitur is applicable to a malpractice case, because this is not such a case. Here the operator was not called upon to perform a surgical operation, where it is a proper defense to show that the methods ordinarily followed in a surgical operation were followed. In this case, the plaintiff was well and simply called upon the beauty expert to receive a shampoo and a permanent hair curl. In performing this work, all the instrumentalities used in connection therewith were under the control of the defendant's operator, and if the evidence tends to show that in the exercise of ordinary care the injuries complained of would not ordinarily follow, the doctrine of res ipsa loquitur would apply.

In Sutcliffe v. Fort Dodge G. & E. Co., 218 Iowa 1386, 1. c. 1394, 257 N. W. 406, 410, this court said:

''That rule is generally applied where 'all the instrumen-

talities which could likely cause the accident were under the exclusive control and management of the defendant, and that the accident was such as would not ordinarily occur if due care had been exercised in the control of such instrumentalities.' "

The evidence in this case fails to show that the injuries sustained by plaintiff were such as would ordinarily result from the kind of hair treatment ordered by plaintiff. While the testimony is conflicting as to the nature of the injuries, there is testimony in this record from which the jury could find that plaintiff received several burns from the treatment, and there is no testimony that hair treatments ordinarily result in scalp burns. It is our conclusion that this is a case peculiarly applicable within the doctrine of res ipsa loquitur. This conclusion is supported by the following cases: Sutcliffe v. Fort Dodge G. & E. Co., 218 Iowa 1386, 257 N. W. 406; Larrabee v. Des Moines Tent & Awning Co., et al., 189 Iowa 319, 178 N. W. 373; Orr v. Des Moines Electric Light Co., 207 Iowa 1149, l. c. 1155, 222 N. W. 560; Harvey v. Borg, 218 Iowa 1228, 257 N. W. 190; Harter v. Colfax Elec. L. & P. Co., 124 Iowa 500, 100 N. W. 508; Chauvin v. Krupin, et al., 4 Cal. App. (2d) 322, 40 P. (2d) 904; Givens v. Spalding Cloak Co., 228 Mo. App. 169, 63 S. W. (2d) 819; Glossip v. Kelly, 228 Mo. App. 392, 67 S. W. (2d) 513.

No cases have been called to our attention holding that the doctrine of res ipsa loquitur does not apply in this kind of action. In the case of Chauvin v. Krupin, et al., 4 Cal. App. (2d) 322, 40 P. (2d) 904, 905, the court said:

"These acts constituted the entire operation undertaken by defendants in which plaintiff might have received her injuries, and they were all charged to have been done in a negligent manner. Under the original complaint, plaintiff was entitled to describe, as she did in her testimony, the acts of the defendants in the course of their work. She was not required under these allegations, nor did she undertake, to attribute the injury to any specific act of either defendant; nor did she attempt to explain how it occurred. Both the complaint and the testimony of plaintiff clearly show that she did not know, or claim to know, the particulars in which defendants acted negligently, whether in the placing of the heater upon her head, its use or manipulation, or the inadequate protection provided against injury from burns. * * * It is a case in which the application of the res ipsa loqui-

tur doctrine is eminently just and proper. The devices used in the process were under the exclusive control of the defendants. The injury was one which in the natural course of things would not have occurred had defendants used due care, and plaintiff was therefore entitled to recover, unless the defendants offered a satisfactory explanation to overcome the presumptive evidence of their negligence. This they failed to do. Their testimony, in effect, was that their work was done so carefully that it would have been impossible for plaintiff to have sustained the injury claimed. No attempt was made, however, to account for the fact that, when the operation was finished, plaintiff was suffering from a severe burn. The attempted explanations of defendants were not satisfactory to the trial court, and the finding of negligence is amply supported by the evidence. The pleadings and evidence are sufficient to support the findings and judgment, and it is therefore affirmed.''

In Givens v. Spalding Cloak Co., 228 Mo. App. 169, 63 S. W. (2d) 819, 826, the court said:

''But, in this case, if the condition of plaintiff's scalp is the result of burns, it is likewise manifest that they were *far too deep and extensive* to be the usual and ordinary result of careful administration, and hence there appears to be, in the evidence, reasonable foundation for the jury, if it so believes and finds, to draw an inference of negligence in the manner of the administration of the permanent. It is not an inference which the *law itself* draws, but it is an inference of fact which, if properly supported by evidence, the law *permits the jury to find* if they deem it proper from the evidence before them.''

So in this case there was evidence tending to show that plaintiff sustained one or two third degree burns, and two or three slighter burns. Of course, this is denied by defendant's witnesses, but under the res ipsa loquitur doctrine the jury may be warranted in finding an inference of negligence in the manner of the administration of the treatment.

A first degree burn causes redness; a second degree burn causes a blister; and a third degree burn causes destruction of the tissue. Plaintiff's medical testimony tends to show that immediate medical treatment would probably not have prevented the infection from going below the outer layer of the scalp be-

cause there was a third degree burn with destruction of the tissue which permitted the infection to go deeper.

For the reasons given, we are constrained to hold that the doctrine of res ipsa loquitur applies in this kind of action, and no error was committed in the submission of this case to the jury.

■■■ II. Defendant also contends that the court erred in failing to direct a verdict because the evidence failed to show that plaintiff was free from contributory negligence. It is true that there is evidence in this case tending to show that plaintiff's injuries were aggravated because of her failure to procure proper medical treatment after the injuries were received. If, however, plaintiff received certain injuries which would not ordinarily have followed as a result of the treatment received, then she would be entitled to her damages therefor, unless she in some manner contributed to the original injuries.

As shown by the discussion of the previous division of this opinion, it was for the jury to say whether or not the injuries sustained by plaintiff were such as would ordinarily follow a treatment of this kind. Subsequent negligence of the plaintiff aggravating the injuries does not constitute contributory negligence. Plaintiff would, therefore, not be guilty of contributory negligence unless her actions contributed in some way to the original injuries. 45 C. J. 983, par. 537; Indiana Union Tract Co. v. Ohne, 45 Ind. App. 632, 89 N. E. 507; Theiler v. Tillamook County, 81 Ore. 277, 158 P. 804; Standard Oil Company v. Bowker, 141 Ind. 12, 40 N. E. 128; Goshen v. England, 119 Ind. 368, 21 N. E. 977, 5 L. R. A. 253; Bradford City v. Downs, 126 Pa. 622, 17 A. 884; Jenney Electric Mfg. Co. v. Flannery, 53 Ind. App. 397, 98 N. E. 424.

This rule is set out in 45 C. J. 983, par. 537, as follows:

"The term 'contributory negligence' is properly applied to negligence which contributed * * * to cause the injury, and not to negligence subsequent to the injury aggravating the consequences thereof. While a person who is injured as the result of the negligence of another is bound to exercise ordinary care to prevent or reduce the damages consequent to an injury, and cannot recover enhanced damages growing out of his failure to use such care, such subsequent neglect only goes to the amount and will not defeat recovery for the original injury."

In Dippold v. Cathlamet Timber Co., 111 Ore. 199, 225 P. 202, 205, the court said: .

"Contributory negligence and avoidable consequences are two quite different things. The one is a bar to any action whatever, * * *. The other simply goes to the lessening of the damages caused by the acts of the defendant. * * * Contributory negligence acts concurrently with that of the defendant."

It is our conclusion that any subsequent negligence of the plaintiff which might have increased her damages goes only to the amount and will not defeat recovery for the original injury. The question of plaintiff's contributory negligence as to the original injury was properly submitted to the jury, and we find no error therein.

■■■ III. Appellant also contends that the court erred in failing to sustain paragraph 14 of her motion for a directed verdict because plaintiff signed a written agreement, marked Exhibit A, *after* the services were rendered and *after* the injury was received, and that the defendant fully complied with the agreement of settlement set out in said exhibit. This error is based upon a settlement claimed to have been made between the parties *after* plaintiff's injuries were received. In order to take advantage of such a settlement it must be pleaded. The defendant did originally plead such a settlement in count IV of the amendment to her answer, but that amendment was stricken out on motion, because it was filed too late, and because it changed the issues. Although this motion was sustained, *no error is alleged because of the court's action in so doing*. The case, therefore, stands as if no such settlement was pleaded. This alleged error, therefore, cannot be reviewed on appeal.

■■■ IV. It is likewise contended that the court erred in failing to sustain appellant's motion for a directed verdict "because defendant made and tendered a *standing offer* of settlement" to patrons in the event of injury, and that appellee accepted said offer, thereby making a contract of settlement for her injuries. The evidence tends to show that the standing offer referred to was a general offer made to all patrons through signs posted at conspicuous places in appellant's shop.

The only reference to any such settlement alleged in defendant's pleadings is that contained in count IV of defendant's answer; but that count was stricken out on plaintiff's motion,

and no error is alleged because of the court's action in so doing. The case, therefore, stands as though no such settlement was ever pleaded. Defendant's answer therefore contains no allegation of any settlement alleged to have been made through any standing offer after appellee's injuries were received. This alleged error, therefore, cannot be reviewed on appeal for the same reasons expressed in the preceding division hereof.

 V. Appellant contends that the court erred in not permitting Dr. Walston, plaintiff's first attending physician, to testify concerning her injuries. It is conceded that the relation of physician and patient existed between the witness and plaintiff. Appellee, therefore, contends that the testimony of this witness was incompetent because of the relationship existing between the parties. Section 11263 of the Code provides that:

"No practicing * * * physician, surgeon, * * * who obtains * * * information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office * * *. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

Appellant contends that the testimony of Dr. Walston, plaintiff's first attending physician, was competent, and that appellee waived her rights under the statute because she herself and another doctor testified concerning her injuries. The only testimony in this case under which it is claimed that appellee waived her rights is her own testimony and that of Dr. Smith, another physician attending plaintiff, concerning her injuries. Appellant contends that because this testimony was given on behalf of the appellee, she waived her rights under the statute to bar the testimony of Dr. Walston, the first physician treating her injuries. She only called upon him once, however, and thereafter was treated by Dr. Smith, another physician.

In support of appellee's contention that her testimony and that of Dr. Smith describing her injuries did not amount to a waiver of her rights under the statute, she cites the case of Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N. W. 891, where the authorities are reviewed and an exhaustive discussion of the question is made by this court.

Appellant contends that the testimony of Dr. Walston is competent under the rule announced in Woods v. Town of Lisbon, 150 Iowa 433, 130 N. W. 372, and Reed v. Fuel Co., 160 Iowa 510, 141 N. W. 1056. These cases, however, and others like them are distinguished in an exhaustive opinion written by Justice Salinger in Jacobs v. City of Cedar Rapids, supra. The facts in Jacobs v. City of Cedar Rapids are identical with the facts in the present case. We, therefore, deem it unnecessary to again review the law upon this question, but for a further discussion thereof refer to that case, 181 Iowa 407, 419, 164 N. W. 891, 894. In that case, as in this, the plaintiff and plaintiff's physician gave testimony concerning her injuries, and therein a doctor offered by defendant testified that he visited plaintiff professionally as to her condition. He was then asked: "Now, you may state what, if anything, you found the matter with her." The objection thereto was sustained on the ground of privilege. In that case, as in this, the plaintiff and her other physician gave testimony relating to the extent and effect of plaintiff's injuries.

In that case this court said:

"Did this testimony open the door to letting a doctor whom plaintiff did not call as a witness disclose what he obtained professionally during the period covered by the testimony adduced for plaintiff, to the extent of telling any and all things he then found the matter with her, and all differences in ailment then existing? In resolving this, one may not leave out of consideration the policy of the statute. That statute should have a liberal construction, because its purpose is to make it possible for every person to fully and fairly consult with a physician or submit himself to his examination without anticipation or fear that the confidence reposed may be broken in upon by a subsequent examination of the physician as a witness. * * * it was the legislative intent that the patient might confide freely, and was not to be deterred therefrom by fear that this confidence would create opposing testimony. There is no punishment provided for the physician who reveals what has been confided to him. About all, then, that the statute could have aimed to do was to prevent revealing on the witness stand. It must have been understood by the legislature that those who made confidential revelations to physicians might enter into and produce testimony in litigation wherein it would be very material, either as impeachment or

otherwise, to have the physician disclose what he had been told, and it must have intended, therefore, that the occurrence of these conditions should not operate to waive the privilege. It has, therefore, been held that such testimony is not made admissible because it will impeach * * *, nor because it will operate to defeat falsehood. * * * *And that the naked fact that plaintiff makes a witness of one of her doctors does not give consent that defendant may make one of any or all other of plaintiff's doctors and have them testify on the same general subject to which the witness of plaintiff spoke."* (Italics ours.)

This rule is supported by the following cases: Battis v. Chicago R. I. & P. R. Co., 124 Iowa 623, 100 N. W. 543; McConnell v. City of Osage, 80 Iowa 293, 45 N. W. 550, 8 L. R. A. 778; Burgess v. Sims Drug Co., 114 Iowa 275, 86 N. W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359; Baxter v. City of Cedar Rapids, 103 Iowa 599, 72 N. W. 790; Lauer v. Banning, 140 Iowa 319, 118 N. W. 446. We are satisfied with the rule announced in these cases and adhere thereto.

Another reason why appellant's contention cannot be sustained in this case is because the defendant failed to advise the court of what appellant intended to prove by the physician called on behalf of defendant. Appellee contends that before the appellant can complain of the erroneous exclusion of evidence of this nature, she must first show by the record that she has been prejudiced by the ruling of the court, and if no record has been made tending to show what defendant offered to prove, the ruling cannot be considered prejudicial.

The record in this case fails to show what appellant intended to prove by the doctor called by her. It is the settled rule of this court that where the record fails to show what counsel expects to prove by a witness in this kind of action no prejudice is shown, and none will be presumed. Arnold v. Livingstone, et al., 155 Iowa 601, 134 N. W. 101; Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N. W. 891; Wangen v. Upper Iowa Power Co., 185 Iowa 110, 169 N. W. 668; McGuire v. Interurban R. Co., 199 Iowa 203, 200 N. W. 55; 18 Iowa Law Review, 304-309.

In Arnold v. Livingstone, et al., 155 Iowa 601, 1. c. 606, 134 N. W. 101, 103, this court, speaking through Justice Evans, said:

"It is urged by appellant that the questions above set out

were proper, and that the trial court should have permitted them to be answered. If this contention were conceded, it would avail appellant little on this appeal. There is nothing in any of the questions which brings before us the particular matter attempted to be proved. The proposed evidence might have been admissible, and yet be insufficient to cure the deficiency of plaintiff's case. We have repeatedly held that we will not reverse a case upon such rulings as are here shown, unless it be made to appear in some manner what the answer of the witness would have been. Porter v. Moles, 151 Iowa 279, 131 N. W. 23; Kuhn v. Gustafson, 73 Iowa 633, 35 N. W. 660; In re Trotter's Will, 117 Iowa 417, 90 N. W. 750. If we were to reverse this case upon this ground and remand it for the purpose of permitting these questions to be answered, the answers might prove to be wholly negative. This is illustrated in this record by the interrogatory * * * five, and the answer thereto. The trial court permitted an answer to that question which proved to be a pure negation. If the trial court had sustained an objection to such question, and if we were to reverse upon such ruling, such reversal would be based upon an imaginary error and not a real one. The reversal would be rendered farcical by a subsequent negative answer. * * * It was therefore incumbent upon the plaintiff to make it appear in some proper way what the proposed testimony was or would be.''

Likewise in the case at bar, as appellant failed to make any offer of what she intended to prove by the witness, we are unable to say that any prejudice resulted to the defendant by the court's action. We are, therefore, constrained to hold that the ruling of the lower court upon this question was correct.

Other errors are alleged for a reversal of this case. We have, however, given them all careful consideration, but find no merit therein.

For the reasons hereinabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

HAMILTON, C. J., and DONEGAN, PARSONS, RICHARDS, SAGER, and STIGER, JJ., concur.